IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN ROE, | Case No. 3:25-CV-128 |
| Petitioner, | JUDGE STEPHANIE L. HAINES |
| v. | |
| LEONARD ODDO, *in his official capacity as Warden of Moshannon Valley Processing Center, et al.*, | |
| Respondents. | |

## OPINION

On April 30, 2025, Petitioner John Roe ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus (the "Petition") (ECF No. 1) and a Motion for a Temporary Restraining Order and/or Preliminary Injunction (the "PI Motion") with an accompanying Brief in Support (ECF Nos. 2, 4). On May 9, 2025, Respondents Leonard Oddo (in his official capacity as Warden of Moshannon Valley Processing Center), Brian McShane (in his official capacity as Acting Field Office Director of the Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") Philadelphia Field Office), Kristi Noem (in her official capacity as Secretary of the Department of Homeland Security ("DHS")), and Pam Bondi (in her official capacity as Attorney General of the United States) (collectively, "Respondents"), through counsel, filed a Response Brief in Opposition to the PI Motion. (ECF No. 9). On May 14, 2025, Petitioner filed a Reply Brief in Support of the PI Motion. (ECF No. 11). On June 11, 2025, the Court held a hearing on the PI Motion. (*See* ECF Nos. 17, 21). Following the hearing, counsel for the parties filed supplemental documents in response to the Court's inquiries. (ECF Nos. 19–20). Accordingly, the PI Motion is ripe for disposition. For the following reasons, the Court **DENIES** the PI Motion at ECF No. 2.

I.  **Factual Background**

According to the Petition, Petitioner "was abducted from his home somewhere in Southern Asia, likely in either India or Sri Lanka" and "brought to [California] via ship." (ECF No. 1 ¶¶ 19–20). According to the Declaration of Supervisory Detention and Deportation by Officer Kirby Tejeda (the "Tejeda Declaration"),[1] on or about May 17, 1994, ICE initiated proceedings against Petitioner, charging him with removability under § 241(a)(1)(B) of the Immigration and Nationality Act ("INA").[2] (ECF No. 9-1 ¶ 3). "Petitioner came to DHS['s] attention pursuant to an April 8, 1994 [criminal] conviction for Sodomy: Deviate intercourse with another person and sexual abuse. Petitioner was sentenced to one to three years['] incarceration." (*Id.*).

Following his criminal conviction, Petitioner's deportation proceedings culminated on or about July 27, 1995, when an immigration judge ordered Petitioner to be removed to India. (ECF No. 9-2 at 1). Petitioner appealed that order to the Board of Immigration Appeals (the "BIA"), but the BIA dismissed his appeal on December 4, 1995, making the removability order final. (*Id.*).

According to the Tejeda Declaration, in April 1995, ICE detained Petitioner; then, in June 1996, ICE released Petitioner on his own recognizance; and, in October 1997, Petitioner failed to appear for his hearing regarding removal, which ICE provided notice for via mail in August of

---

[1] The Court notes that it largely derives its facts from the Tejeda Declaration because, at the hearing, counsel for Petitioner stipulated to the factual timeline of the events—but for the factual assertions set forth in Paragraphs 14 and 18.

[2] Upon the passage of the INA, and for subsequent decades, immigration enforcement and administration were within the purview of the Immigration and Naturalization Service ("INS"). In 2002, however, Congress passed the Homeland Security Act, which abolished the INS, 6 U.S.C. § 291, and transferred the INS's responsibilities to the DHS, including its agency, ICE, *id.* §§ 202, 557. *See Louisiana Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Lab.*, 745 F.3d 653, 659 (3d Cir. 2014). Accordingly, any references to the INS in the INA are now considered to refer to DHS. *See* 6 U.S.C. § 557; *see also Ceesay v. Kurzdorfer*, No. 25-CV-267, 2025 WL 1284720, at *16 (W.D.N.Y. May 2, 2025).

that same year. (ECF No. 9-1 ¶¶ 5–7). In August 2003, ICE re-detained Petitioner pursuant to an arrest warrant for felonies (possession of weapon of mass destruction and possession of a firearm by a felon) (*id.* ¶ 8), and he pled guilty to the possession-of-a-firearm-by-a-felon charge (ECF No. 19 at 5). Thereafter, in June 2005, ICE released Petitioner on an Order of Supervision ("OSUP"). (ECF No. 9-1 ¶¶ 9, 12). Since his release in 2005, a re-detention in June 2013, and a subsequent release under an OSUP in June 2013, DHS avers that Petitioner has failed to comply with ICE ERO processes, such as failing to complete his travel document application. (*Id.* ¶¶ 10–17).

"On or about January 26, 2025, Petitioner was taken into custody relative to a changed circumstance as it is believed with the new immigration policies there is a [significant likelihood of removal in the reasonably foreseeable future] for criminal aliens." (*Id.* ¶ 18).[3] Once in custody, on three separate occasions, ICE provided Petitioner with travel document applications to complete. (*Id.* ¶ 19). On May 1, 2025, Petitioner submitted a travel document application packet, albeit an incomplete one, to the New York City point of contact to provide to the Indian Consulate for travel document issuance. (*Id.* ¶¶ 20–21). Simultaneously, ICE Removal and International Operations was requested to assist with the Indian Consulate for the issuance of travel document. (*Id.* ¶ 21). According to the Tejeda Declaration, "[i]t is anticipated that the Indian Consulate will verify [P]etitioner's citizenship and issue a travel document. Once that

---

[3] The new immigration policy referenced appears to be Section Eight of Executive Order 14165, entitled Securing Our Borders, signed by President Donald J. Trump on January 20, 2025, 90 Fed. Reg. 8467. (*See* ECF No. 11 at 7 n.3). Section Eight reads:

> <u>Additional International Cooperation</u>. The Secretary of State, in coordination with the Attorney General and the Secretary of Homeland Security, shall take all appropriate action to facilitate additional international cooperation and agreements, consistent with the policy of Section 2, including entering into agreements based upon the provisions of section 208(a)(2)(A) of the INA (8 U.S.C. 1158(a)(2)(A)) or any other applicable provision of law.

90 Fed. Reg. 8467, at 8468.

occurs it is anticipated that [ICE] ERO will be able to schedule his removal quickly, hopefully within approximately 30 days of the issuance of a travel document." (*Id.* ¶ 24). In short, "[i]t is anticipated that [P]etitioner's removal from the United States is imminent upon the issuance of a travel document." (*Id.* ¶ 25).

In early May 2025, ICE reviewed Petitioner's custody status, determining that his continued detention was warranted because he posed a threat to public safety and had a final order of removal. (ECF No. 9-4 at 1). At the same time, ICE also sent Petitioner a Notice of Revocation of Release. (ECF No. 9-2).

In late May 2025, Petitioner's travel document application was submitted to the Indian Consulate. (ECF No. 20-1 ¶ 2). On June 6, 2025, Petitioner had an informal interview regarding his OSUP revocation. (*Id.* ¶ 3). His next custody review is scheduled for July 25, 2025, at DHS Headquarters. (*Id.* ¶ 4).

On April 30, 2025, Petitioner filed his PI Motion. (ECF No. 2). With his PI Motion, Petitioner requests this Court to:

> (1) Issue an Order requiring Respondents to release Petitioner and enjoining them from continuing to detain Petitioner during the pendency of this petition, either pursuant to a Temporary Restraining Order and/or Preliminary injunction, or to this Court's inherent authority under *Lucas v. Hadden*; and/or
> (2) Order Respondents to stay any transfer or removal of Petitioner during the pendency of this petition; and/or
> (3) Order Respondents to show cause why the Petition for a Writ of Habeas Corpus should not be expeditiously granted; and/or
> (4) Grant Petitioner such other further and additional relief as the Court deems just and appropriate.

(ECF No. 4 at 27).

On May 2, 2025, the Court denied the PI Motion "insofar that it seeks relief via a temporary restraining order[]" because Petitioner "failed to show that any injury, loss, or damage will occur before Respondents can be heard in opposition[.]" (ECF No. 7 at 1). Thereafter, the

parties completed their briefing on the request for a preliminary injunction, and the Court held a hearing on said request. Now that the Court has heard Respondents' opposition, it addresses Petitioner's preliminary injunction request that the Court order Petitioner's immediate release and stay any transfer from Moshannon Valley Processing Center pending the disposition of his Petition.

**II.     Jurisdiction**

In opposing this Court's jurisdiction, Respondents argue that "8 U.S.C. § 1252(g) strips district courts of jurisdiction over 'any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.'" (ECF No. 9 at 8). Respondents also argue that "8 U.S.C. § 1252(b)(9) states that if a claim 'aris[es] from any action taken or proceeding brought to remove an alien,' then review of the claim 'shall be available only in judicial review of a final order'" in the applicable circuit court. (ECF No. 9 at 9) (quoting *Tazu v. Att'y Gen.*, 975 F.3d 292, 299 (3d Cir. 2020)). In his Reply Brief, Petitioner argues that neither 8 U.S.C. § 1252(g) nor (b)(9) strips this Court of jurisdiction because Petitioner "is contesting his detention and is not seeking judicial review of [his] removal order." (ECF No. 11 at 2). The Court agrees with Petitioner.

Title 28, United States Code, Section 2241 grants federal courts the authority to hear habeas corpus matters by aliens challenging the lawfulness of their detention by ICE. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018). Insofar as "[t]he allegations here are separate and apart from removal proceedings," this Court has consistently held that it has jurisdiction over habeas corpus matters by aliens challenging the lawfulness of their detention by ICE. *Doe v. U.S. Dep't of Homeland Sec.*, No. 3:24-CV-259, 2025 WL 360534, at *7 (W.D. Pa.

5

Jan. 31, 2025); *see Bodnari v. Noem*, No. 3:24-CV-163, 2025 WL 317985, at *2 (W.D. Pa. Jan. 28, 2025); *Akhmadjanov v. Oddo*, No. 3:25-CV-35, 2025 WL 660663, at *2 (W.D. Pa. Feb. 28, 2025); *see also Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) ("[Title 8 U.S.C.] § 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision ... to seek removal, or the process by which ... removability will be determined." (internal quotations and citations omitted)); *id.* ("[Title 8 U.S.C.] § 1252(g) is similarly narrow. That provision limits review of cases arising from decisions to commence proceedings, adjudicate cases, or execute removal orders. We have previously rejected as implausible the Government's suggestion that § 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation." (internal quotations and citations omitted)).

Here, the Court is not reviewing Petitioner's removal order. Instead, it is examining the contest of Petitioner's detention. Thus, the Court has jurisdiction to proceed under said scope of review.

### III. Applicable Statutory and Regulatory Framework

Title 8 U.S.C. § 1231 "governs the detention, release, and removal of individuals 'ordered removed.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (quoting 8 U.S.C. § 1231(a)(1)(A)). "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.'" *Id.* (quoting 8 U.S.C. § 1231(a)(1)(A)). Detention is mandatory during the 90-day removal period. 8 U.S.C. § 1231(a)(2).

The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B). "[Section] 1231(a)(6) provides that after the 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." *Johnson*, 596 U.S. at 575 (quoting 8 U.S.C. § 1231(a)(6)).

Regarding continued detention after the 90-day removal period, the Supreme Court, in *Zadvydas v. Davis*, recognized a six-month "presumptively reasonable [removal] period of detention." 533 U.S. 678, 701 (2001). "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. "In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions," *id.* at 699–700, or for other reasons as prescribed by the Code of Federal Regulations.

The Code of Federal Regulations sets forth regulations regarding the release and revocation of release of an alien with a final order of removal. *See, e.g.*, 8 C.F.R. § 241.4 (entitled "Continued detention of inadmissible, criminal and other aliens beyond the removal period"). With few exceptions, Section 241.4(a) generally grants authority to designated ICE officials to release or parole aliens, as well as continue an alien's custody. *Id.* § 241.4(a).

Revocation of release is governed by Section 241.4(*l*). Revocation of release can occur for two reasons: (i) the alien violates the conditions of release,[4] or (ii) ICE determines in its discretion to revoke release.[5] *Id.* § 241.4(*l*)(1)–(2).

DHS also has promulgated regulations for noncitizens who have "provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed … in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). Section 241.13(i)(2) provides the following:

> [DHS] may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

*Id.* § 241.13(i)(2). Against this legal backdrop, the Court turns to Petitioner's request for a preliminary injunction.

## IV.   Analysis Regarding the PI Motion

---

[4] If ICE revokes release because the alien violated the conditions of release, then, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to [DHS] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(*l*)(1).

[5] In full, Section 241.4(*l*)(2) reads:

> Determination by [DHS]. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [DHS] custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;
> (ii) The alien violates any condition of release;
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(*l*)(1).

Preliminary injunctive relief is an "extraordinary remedy" and "should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). A party seeking to obtain such relief must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Id.*

Failure to satisfy the first factor of the analysis—a likelihood of success on the merits—necessitates denial of the injunctive request. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)). It follows that district courts need not address the other factors if the moving party fails to establish the first factor. *See Marvin R.V. v. Tsoukaris*, No. 20-CV-5225, 2020 WL 6689760, at *5 n.2 (D.N.J. Nov. 13, 2020) (collecting Third Circuit cases to support the statement that "[because the p]etitioner has failed to meet his burden with respect to the likelihood of success on the merits, the Court need not address the remaining factors"); *see also Peter v. Att'y Gen. of New Jersey*, No. 23-CV-3337, 2023 WL 4627866, at *1 (D.N.J. July 19, 2023).

Regarding the likelihood-of-success-on-the-merits factor, Petitioner argues that (i) his removal is not reasonably foreseeable, and his detention therefore is unlawful (ECF No. 9 at 3–11), and (ii) ICE's re-detention and continued detention of Petitioner violates the Administrative Procedures Act ("APA"), the INA and its attendant regulations, and Petitioner's Fifth Amendment right to due process (*id.* at 11–18). Respondents make arguments in opposition to each of Petitioner's arguments. (ECF No. 9 at 10–16). The Court examines Petitioner's

arguments in order, holding that Petitioner has failed to establish a likelihood of success on the merits of his claims.

### A. Removability Is Reasonably Foreseeable

Petitioner's first argument is that his removability is not reasonably foreseeable, and therefore his detention is unlawful. Petitioner relies on 8 U.S.C. § 1231(a), the statute that Petitioner is detained under, and *Zadvydas*. (*See* ECF No. 4 at 3–11). Conversely, Respondents argue that Petitioner possesses the burden of showing that his detention has become unlawful, and Petitioner has failed to meet such burden. (ECF No. 9 at 13–16).

In *Zadvydas*, the Supreme Court decided that 8 U.S.C. § 1231(a)(6), the post-removal-period statute, authorizes the Government to detain a removable alien "only for a period *reasonably necessary* to secure the alien's removal," rather than "*indefinitely* beyond the removal period." 533 U.S. at 682 (emphasis in original). The *Zadvydas* Court prescribed the presumptively reasonable time period as six months. *Id.* at 701. The presumptively reasonable time period is only a presumption—not an ironclad timeframe. *Id.* ("This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."). The applicable burden only shifts to the Government if, in addition to showing that the post-removal-order detention has surpassed six months, the alien also shows that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* ("After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.").

10

Here, the Court *assumes without deciding* that Petitioner has shown that the post-removal-order detention has surpassed six months. Petitioner's order of removability became final on December 4, 1995, beginning the 90-day removal period (*see* ECF No. 9-2), when Petitioner's detention was mandatory, 8 U.S.C. § 1231(a)(2). Following the 90-day removal period's conclusion on March 3, 1996, ICE had the option to continue detention if removal was reasonably foreseeable in the future or release Petitioner under terms of supervision. *Johnson*, 596 U.S. at 575 (quoting 8 U.S.C. § 1231(a)(6)). ICE eventually released Petitioner in June 1996 (ECF No. 9-1 ¶¶ 5–6), although the Court is unclear as to the reasoning for his release rather than removal. Thereafter, on two additional occasions, ICE detained and subsequently released Petitioner under terms of supervision. (*See* ECF No. 9-1 ¶¶ 8, 12, 15; ECF No. 9-2 at 1). According to Petitioner, the Court should aggregate his detention time for purposes of the *Zadvydas* analysis, and find that, in total, subsequent to the 90-day removal period of mandatory detention, ICE has detained Petitioner for approximately two-and-a-half years off and on. (ECF No. 11 at 1).[6]

Regardless of whether Petitioner has shown his detention has surpassed six months, Petitioner has failed to produce evidence demonstrating good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents argue, in short, "this time it is different." In support of their argument, Respondents invoke the new Administration's policy regarding removing criminal aliens. (ECF No. 9-1 ¶ 18). More importantly, Respondents also point out that, for the first time since Petitioner has been detained,

---

[6] Neither the Supreme Court nor the Third Circuit have ruled on the aggregation of post-removal time when such detention is interrupted by release pursuant to an OSUP. District courts in this Circuit have voiced skepticism of such an approach. *See, e.g., Nma v. Ridge*, 286 F. Supp. 2d 469, 476 n.2 (E.D. Pa. 2003) ("It is not clear to the court, nor does the court necessarily agree, that the length of the petitioner's detention should be aggregated to include time he was detained prior to his release on an order of supervision. Each detention had its own particular set of circumstances."). This Court is skeptical of such an approach as well. Nevertheless, for the reasons subsequently discussed the Court need not address this issue.

ICE possesses a sufficient travel document application submitted by Petitioner. (*Id.* ¶¶ 24–25). Respondents aver that "[i]t is anticipated that the Indian Consulate will verify [P]etitioner's citizenship and issue a travel document. Once that occurs it is anticipated that [ICE] ERO will be able to schedule his removal quickly, hopefully within approximately 30 days of the issuance of a travel document." (*Id.* ¶ 24). Indeed, in late May 2025, Petitioner's travel document application was submitted to the Indian Consulate. (ECF No. 20-1 ¶ 2).

Accordingly, the removal proceeding is underway, and Petitioner has not produced any evidence to the contrary that supports his assertion that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner only invokes past instances where ICE did not remove him. Conversely, Respondents have represented that, due to changes in circumstances—such as the administrative policy change and the submission of a travel document application—Petitioner's removal is likely in the reasonably foreseeable future. Indeed, the sole purpose of re-detaining Petitioner is to facilitate his removal. Accordingly, Petitioner has failed to establish the likelihood of success on the merits of his claim. *See Barenboy v. Att'y Gen.*, 160 F. App'x 258, 261 n.2 (3d Cir. 2005) ("Once the six-month period has passed, the burden is on the alien to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future...." (quoting *Zadvydas*, 533 U.S. 678 at 701)); *see also Castaneda v. Perry*, 95 F.4th 750, 756 (4th Cir. 2024). Therefore, the Court denies the PI Motion on the grounds that Petitioner's removal is reasonably foreseeable.

### B. ICE's Re-detention and Continued Detention of Petitioner Does Not Violate the APA, the INA and Its Regulations, nor Petitioner's Fifth Amendment Right to Due Process

Regarding his APA argument, Petitioner offers the following:

> Under the [applicable] statutory and regulatory scheme ..., an OSUP may not be revoked without notice and, at minimum, an informal interview, 8 C.F.R. §

241.13(i)(3), and upon specific required findings, including that the individual has either violated their conditions of release or that they may be removed in the foreseeable future. None of these procedures were followed in this case and these failures alone render the revocation of [Petitioner's] OSUP and the decision to re[-]detain [Petitioner] arbitrary and capricious.

(ECF No. 4 at 14). Respondents argue that (i) the APA precludes judicial review on this issue and (ii) even if the Court had jurisdiction on this issue, ICE followed the applicable statutory and regulatory laws. (ECF No. 9 at 11–13). The Court agrees with Respondents' second point.[7]

To explain its conclusion that ICE complied with the applicable laws, the Court first must articulate what laws are applicable here. After Petitioner's March 1996 release from ICE custody, on two additional occasions, ICE has detained and subsequently released Petitioner under terms of supervision. (*See* ECF No. 9-1 ¶¶ 8, 12, 15; ECF No. 9-2 at 1). The last detention and release under terms of supervision occurred in June 2013. (ECF No. 9-2 at 1). Petitioner alleges that this release was due to the fact there was no significant likelihood of

---

[7] Regarding Respondents' first point, the Court offers the following. The APA does not apply to "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). With respect to this exception, the Supreme Court has stated:

> A court could never determine that an agency abused its discretion if all matters committed to agency discretion were unreviewable. To give effect to [5 U.S.C.] § 706(2)(A)[, which commands that a court set aside arbitrary and capricious agency action,] and to honor the presumption of review, we have read the exception in § 701(a)(2) quite narrowly, restricting it to "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). Here, the Court finds that the statutory and regulatory scheme provides a framework giving the Court a meaningful standard: Either ICE did or did not follow the legal procedures governing the removal process. *E.g.*, 8 C.F.R. § 241.4(*l*)(2). The Court offers no opinion regarding ICE's discretionary *decision* to re-detain Petitioner.

Further, the APA does not apply to "statutes [that] preclude judicial review." 5 U.S.C. § 701(a)(1). Title 8 U.S.C. § 1252(a)(2)(B) provides that "[n]otwithstanding any other provision of law ... including [S]ection 2241 of Title 28, or any other habeas corpus provision ... no court shall have jurisdiction to review ... any other decision or action of the Attorney General or the Secretary of [DHS] the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of [DHS]...." Nevertheless, the Supreme Court has decided that "§ 1252(a)(2)(B) applies ... only to Attorney General determinations made discretionary by statute, [not] to determinations declared discretionary by the Attorney General himself through regulation." *Kucana v. Holder*, 558 U.S. 233, 237 (2010) ("We hold that the key words 'specified under this subchapter' refer to statutory, but not to regulatory, specifications."). Here, the Court finds that it has jurisdiction to review ICE's action taken pursuant to *regulations*, rather than *statutes*.

removal in the reasonably foreseeable future. (ECF No. 21 at 53). Respondents allege that ICE released him due to a leg injury. (*Id.* at 44). This distinction is meaningful because it determines what regulations apply to ICE's conduct.

At the June 11, 2025, hearing, the Court inquired whether a document existed stating the precise reason as to Petitioner's release. Neither party submitted such a document.

Nonetheless, for the reasons discussed at the hearing—namely, the fact that ICE re-detained and released Petitioner in the same day, which is unlikely enough time to find that his removal was not reasonably foreseeable—the Court believes that ICE released Petitioner due to his leg injury. Further, Petitioner has failed to provide any evidence to the contrary. Therefore, the Court finds that the governing regulation here is 8 C.F.R. § 241.4(*l*)(2) because ICE released Petitioner on supervision due to a medical condition, rather than releasing him due to a lack of a significant likelihood of removal in the reasonably foreseeable future.[8]

Section 241.1(*l*)(2) provides that "[r]elease may be revoked in the exercise of discretion when, in the opinion of the revoking official: ... It is appropriate to enforce a removal order or to commence removal proceedings against an alien[.]" *Id.* § 241.4(*l*)(2)(iv). Due to administrative policy changes, ICE believed it was appropriate to enforce Petitioner's removal order in January of 2025. The Court will not further scrutinize ICE's discretionary decision—especially considering Petitioner has failed to raise evidence demanding further inquiry. Moreover, to the extent that Section 241.1(*l*)(2) requires notice of revocation of supervised release and an informal interview, as 8 C.F.R. § 241.4(*l*)(1) and 8 C.F.R. §241.13(i)(2) do, ICE provided such notice (*see* ECF No. 9-2) and informal interview (*see* ECF No. 20-1 ¶ 3). Accordingly, contrary to Petitioner's argument, ICE complied with the applicable laws, and thus no APA violation exists.

---

[8] The Notice of Revocation of Release and the Decision to Continue Detention both provide that ICE revoked Petitioner's OSUP pursuant to 8 C.F.R. § 241.4. (*See* ECF No. 9-2).

14

Additionally, for the reasons outlined above, Petitioner's INA and Fifth Amendment due process claims also fail. Petitioner has not shown that Respondents have violated 8 U.S.C. § 1231 or 8 C.F.R. § 241.4. Conversely, Respondents have shown that they have complied with these laws. Accordingly, Petitioner's INA claim is unsubstantiated. And because compliance with these laws satisfies the requirements of procedural due process—"the opportunity to be heard 'at a meaningful time and in a meaningful manner[]'"—Petitioner's Fifth Amendment claim also is unsubstantiated. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Therefore, the Court denies Petitioner's PI Motion on the grounds that his detention does not violate the APA, INA, or Fifth Amendment.

## V. Conclusion

For the foregoing reasons, the Court **DENIES** Petitioner's PI Motion at ECF No. 2. An appropriate Order follows.

DATE: July 9, 2025

Stephanie L. Haines
**United States District Judge**